U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 APR 19  PM 1:05

CLERK
BY       RC
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ZACHARY KLINKER, )
 )
    Plaintiff, )
 )
v. ) Case No. 5:12-cv-254
 )
LEON FURDIGA and KATHERINE )
SCANLAN, )
 )
    Defendants. )

**ENTRY ORDER DENYING DEFENDANTS'
MOTION TO DISMISS**
(Doc. 27)

    This matter comes before the court on Defendants Leon Furdiga's and Katherine Scanlan's Renewed Motion to Dismiss and/or to Reconsider the District of New Hampshire's August 9, 2012 Order Granting Plaintiff's Motion to Extend Time. (Doc. 27.) Defendants contend that the present action, which was initiated in the District of New Hampshire, was not properly served within the 120 days afforded by Fed. R. Civ. P. 4(m) and must therefore be dismissed. The District of New Hampshire denied Defendants' motion to dismiss without prejudice before transferring the case to the District of Vermont. Defendants seek to renew their motion to dismiss, or alternatively, for this court to reconsider an earlier ruling by the District of New Hampshire that extended the original time for service. Plaintiff opposes the motion, arguing that this court should exercise its discretion to extend the time for service under Rule 4(m) and thus should decline to dismiss the case. (Doc. 41.)

    The court heard oral argument on February 28, 2013, and the parties completed their briefing on March 7, 2013. Plaintiff is represented by Michael F. Walsh, Esq. and Stephen L. Fine, Esq. Defendants are represented by Andrew C. Boxer, Esq. and Joseph J. Sluka, Esq.

I.     **Factual and Procedural Background.**

Plaintiff asserts a personal injury claim against Defendants arising out of a January 13, 2009 incident on Defendants' property. Plaintiff filed the present Complaint on January 11, 2012, in the District of New Hampshire, two days before the three-year statute of limitations purportedly expired.[1] Plaintiff asserts that Attorney Walsh was prepared to file the Complaint earlier, but was delayed due to a personal tragedy in his immediate family. There is no dispute that Attorney Walsh suffered a personal tragedy in December 2011.

Under Fed. R. Civ. P. 4(m), Plaintiff had until May 11, 2012 to serve Defendants. Plaintiff alleges that "Plaintiff's counsel was advised that service would be mailed by the clerk's office with a copy of the Complaint and Summons . . . [and] with the waiver of service" and that it would also "request[] the waiver be signed and returned to the clerk's office." (Doc. 41 at 1.) The District of New Hampshire rejected the proposition that its Clerk's Office assured Plaintiff's counsel that it would effect service on Plaintiff's behalf.[2] On January 26, 2012, the Clerk's Office mailed to Attorney Walsh, among other items, a copy of the summons and "Waiver Issued," and the Clerk's Office noted in a separate entry "Waiver(s) Issued by Mail as to Leon Furdiga, Katherine Scanlan." (Doc. 6.)

On May 10, 2012, the day before Rule 4(m) required Plaintiff to serve Defendants, Attorney Walsh emailed Attorney Boxer, in response to an inquiry from Attorney Boxer who announced that there was "an understanding" that he would be representing Defendants. (Doc. 41 at 2.) Attorney Walsh's May 10 email informed Attorney Boxer

---

[1] The court makes no finding of when the statute of limitations expired.

[2] In ruling on Defendant's first motion to dismiss (Doc. 17.), the District of New Hampshire noted that the Clerk's Office was "maintaining as forcefully as [P]laintiff's counsel" that "no one ever told [P]laintiff's counsel that they would mail the forms, that they gave him the proper forms and he was to mail them." (Hearing Transcript "Tr." at 10-11.) The court, however, accepted that both counsel and the Clerk's Office had "advanc[ed] their version in good faith," even though the court further concluded that counsel's belief that the Clerk's Office would effect service was "an error of counsel." *Id.* at 11.

2

"of the Summons, Complaint and voluntary waiver of service" and "contained the Complaint, Civil Action Cover sheet and photos of the accident." *Id.*

In the months following the expiration of the original 120-day time limit under Rule 4(m), Attorney Walsh allegedly attempted to contact Attorney Boxer to address whether Defendants waived service and when Defendants would be filing an answer. In an email dated July 19, 2012, Attorney Walsh informed Attorney Boxer that he had repeatedly called and emailed him without receiving a response and would therefore seek recourse with the court if Attorney Boxer did not reply. (Doc. 41-3 at 1.) On July 20, 2012, Attorney Boxer responded that he was out of the office and would be available later in the week. *Id.* On August 3, 2012, Attorney Walsh again emailed Attorney Boxer, referencing a series of missed calls and inquiring as to whether he would accept service and when Defendants would be filing an answer. (Doc. 41-4 at 1.) On August 5, 2012, Attorney Boxer responded that he was not authorized to accept service on behalf of Defendants and that he would not be filing an answer. *Id.*

Following the May 11 deadline, Attorney Walsh was also in contact with the District of New Hampshire regarding an extension for service. In a June 25, 2012 Order, the District of New Hampshire *sua sponte* ordered Plaintiff to file a return of service or move to extend the time to comply with Rule 4(m). On June 29, 2012, Plaintiff moved for a sixty-day extension of time, arguing that he had mailed waiver of service forms to Defendants pursuant to Rule 4(d)(1) but that they had not yet responded. The court granted the motion to extend the time to serve until August 29, 2012, which Plaintiff met by serving Defendants on August 26, 2012.

Defendants do not dispute that Plaintiff served Defendants on August 26, 2012, in compliance with the District of New Hampshire's Order extending the time for service. (Doc. 27 at 1.) Defendants, however, point out that they were never served during the original 120 days allowed under Rule 4(m), and that they never received "any request, either written or oral, from Plaintiff requesting that they waive service of process or inquiring about any waivers of service he may have attempted to send." *Id.* Indeed, both Defendants aver that neither received "any other written or oral communication from

3

Attorney Walsh, either in person or by mail" from July 26, 2011 to August 26, 2012. (Doc. 27-1 at 1; Doc. 27-2 at 1.) Defendants allege that "the only communication Plaintiff's attorney had with Defendants prior to serving them" was a letter from Plaintiff's counsel dated July 26, 2011. (Doc. 27 at 2.) This letter stated that Attorney Walsh "represents Zachary Klinker regarding injuries he sustained [at Defendants' home] on January 13, 2009" and requested that Defendants send this "claim letter" to their homeowners' insurer "for further handling." *Id.*

After being served in August, Defendants moved the District of New Hampshire to dismiss under Fed. R. Civ. P. 12(b)(5), arguing that Plaintiff did not have good cause for failing to serve them before May 11, 2012. (Doc. 17 at 1.) At a hearing on November 14, 2012, the District of New Hampshire agreed that Plaintiff had not shown good cause for the failure. The court, however, exercised its discretion under Rule 4(m) and denied the motion to dismiss without prejudice to Defendants renewing their motion in this court. The court then transferred the case to the District of Vermont, and Defendants renewed their motion to dismiss.

## II.    Conclusions of Law and Analysis.

Under Fed. R. Civ. P. 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

*Id.* The Second Circuit has held that while "neglect" is not a basis for good cause, *Zapata v. City of New York*, 502 F.3d 192, 198 (2d Cir. 2007), a district court has discretion to extend the time for service even absent good cause. *Id.* at 197; *see also Gerena v. Korb*, 617 F.3d 197, 201 (2d Cir. 2010) (interpreting Rule 4(m) "to give wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause"). In *Zapata*, the court held that the determination of whether to extend time without good cause "involve[s] a weighing of overlapping equitable considerations[,]" and in exercising its discretion

4

when "good cause is lacking," a district court should "weigh[] the impact that a dismissal or extension would have on the parties." *Zapata*, 502 F.3d at 197. Factors to consider are whether a plaintiff has "advance[d] some colorable excuse for neglect," the length of time the plaintiff waited to effect service or seek an extension, prejudice to the plaintiff "by having the complaint dismissed with prejudice on technical grounds" when the statute of limitations has expired, and prejudice to the defendant by having to defend an otherwise time-barred action, "especially if the defendant had no actual notice of the existence of the complaint until the service period had expired." *Id.* at 198.

Here, Defendants contend that Plaintiff has not shown good cause "because there is a disconnect between Plaintiff's counsel's tragedy [in December 2011] and the failure to serve Defendants" until August 2012.[3] (Doc. 27 at 2.) Plaintiff does not explicitly concede that he has not shown good cause. Rather, he argues that he has advanced a colorable excuse for neglect based on his counsel's "unfortunate family tragedy" that "caused confusion with respect to service of the complaint and return of the waiver." (Doc. 41 at 3.) The parties advanced the same arguments in defending and objecting to Defendants' first motion to dismiss, and the District of New Hampshire concluded Plaintiff had not shown good cause. This court likewise concludes that Plaintiff has not demonstrated good cause for his failure to serve Defendants within the 120-day period mandated by Rule 4(m).

---

[3] Relying on *Johnson v. New York City Board of Education*, 23 F. App'x 70, 72 (2d Cir. 2001), Defendants also argue that attorney neglect is not good cause to excuse Plaintiff's failure to serve. (Doc. 27 at 4, 5.) *Johnson* relies on *McGregor v. United States*, 933 F.2d 156, 159-60 (2d. Cir. 1991), for this proposition. *McGregor* pre-dated the 1993 Amendments to Rule 4 and the Second Circuit's decision in *Zapata* that expressly held "that district courts have discretion to grant extensions even in the absence of good cause." *Zapata*, 502 F.3d at 195-96 ("Before the 1993 Amendments, we generally did not approve an extension absent a showing of good cause, even when a statute of limitations would bar the re-filed action and effectively convert the dismissal without prejudice under Rule 4(m) into a dismissal with prejudice."); *see also Goldblatt v. Nat'l Credit Union Admin.*, 2012 WL 5458082, at *1 (2d Cir. Nov. 9, 2012) (noting *Zapata* "superseded" *McGregor*). As a result, attorney neglect may not necessarily constitute good cause, but a plaintiff could, pursuant to *Zapata*, still advance a colorable excuse for that neglect.

5

In addressing Defendants' renewed motion to dismiss, the court is tasked with weighing overlapping equitable considerations, including prejudice to each party. While the Second Circuit has declined to adopt a per se rule governing the parties' relative prejudice when the suit is otherwise time-barred, "[i]t is obvious that any defendant would be harmed by a generous extension of the service period beyond the limitations period for the action, . . . and it is equally obvious that any plaintiff would suffer by having the complaint dismissed with prejudice on technical grounds." *Zapata*, 502 F.3d at 198. The fact that a plaintiff will suffer prejudice "is no less true where the technical default was the result of pure neglect on the plaintiff's part." *Id.* In the present case, the statute of limitations purportedly expired on January 13, 2012, so the prejudice to Plaintiff if his complaint is dismissed on technical grounds will be great.

If Plaintiff's complaint is not dismissed, Defendants will suffer the prejudice of having to defend an otherwise time-barred action. Defendants, however, were on notice of the existence of Plaintiff's complaint as early as May 10, 2012, and thereafter refused to accept service.[4] *Cf. Zapata*, 502 F.3d at 198-99 (finding prejudice when defendant had no notice "that the action was forthcoming [or] already pending"). Attorney Walsh's May 10, 2012 email included not only the complaint, civil cover sheet, and photographs, but also informed Attorney Boxer that the District of New Hampshire mailed to Defendants the complaint with waiver of service forms, which had not been returned to date. While notice of the complaint is not sufficient to bar dismissal for insufficient service, *see Martin v. N.Y.S. Dep't of Mental Hygiene*, 588 F.2d 371, 373 (2d Cir. 1978), it mitigates the prejudice Defendants will suffer if Plaintiff is granted an extension of time to serve Defendants. Defendants here will neither be forced to defend a suit of which they had no notice until service, *see Zapata*, 502 F.3d at 198-99, nor will they be thrust into the midst of a suit that has already proceeded for some time.[5] *See McGee v.*

---

[4] Attorney Boxer's representation to Attorney Walsh that he would be representing Defendants implies that Defendants knew that a suit was pending.

[5] During oral argument before the District of New Hampshire, the court queried whether Defendants had "any evidence to suggest" prejudice, such as witness unavailability or lost

6

*Pallito*, 2011 WL 7657585, at *2 (D. Vt. Dec. 20, 2011) (concluding prejudice to defendant minimal when the "case [was] still in the earliest stages, . . . [n]o answers ha[d] been filed, and there ha[d] been no discovery"); *Chandler v. Fontaine*, 2008 WL 4642251, at *2-3 (D. Vt. Oct. 15, 2008) (concluding defendants had not demonstrated prejudice when defendants had notice, "retained counsel, and once served [would] be able to participate in all aspects of the case"). Indeed, in their respective affidavits, both Defendants aver that they never received any written or oral communications from Attorney Walsh, but neither Defendant claims he or she was without knowledge of Plaintiff's suit. (*See* Doc. 27-1 at 1; Doc. 27-2 at 1.) Additionally, Defendants were not without knowledge of Plaintiff's injury and his allegation that he was injured while working at Defendants' property, as Defendants acknowledge that they received the July 26, 2011 "claim letter" from Attorney Walsh requesting that Defendants send the claim letter to their insurance company. The court thus concludes that consideration of the impact on the parties of a dismissal or an extension weighs in favor of Plaintiff and also weighs in favor of an extension of time to effect service.

Moreover, Plaintiff has advanced a colorable excuse for neglect by pointing out that, in the intervening months between filing the complaint and serving Defendants, Plaintiff's counsel proceeded on the assumption that Defendants would be waiving service in compliance with the Federal Rules of Civil Procedure.[6] (Doc. 41-2; 41-3.)

---

evidence, and Defendants admitted they could not identify "any evidence" of prejudice Defendants suffered from the approximate three-month delay in service. (Tr. at 11-12.) The District of New Hampshire noted that Defendants pointed only to delay, but the court concluded this was insufficient to show prejudice since the case was only "[a] couple months older than it would have been if [Plaintiff] hadn't been given this extension." *Id.*

[6] There is no basis under the Federal Rules of Civil Procedure for Attorney Walsh's belief that the Clerk's Office would undertake service on Plaintiff's behalf. *See* Fed. R. Civ. P. 4(c)(1) ("The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service."). However implausible or unlikely Attorney Walsh's allegations may be, it was the attorney's "misunderstanding of the governing procedural rules," and courts are generally "'loath to throw plaintiff out of court because of an attorney's defection.'" *Lee Family v. Int'l Paper Co.*, 2010 WL 2949635, at *3 (D. Vt. July 23, 2010) (quoting *McIntosh v. Covenant House*, 2007 WL 1946540, at *8 (S.D.N.Y. June 28, 2007)).

7

Pursuant to Fed. R. Civ. P. 4(d), a defendant "has a duty to avoid unnecessary expenses of serving the summons[,]" and a defendant located in the United States is required to waive service. Fed. R. Civ. P. 4(d)(2) (providing that, absent a showing of good cause for failure to waive, a defendant must pay both the expenses incurred in making service and the reasonable expenses associated with collecting any service expenses). Here, Defendants were obligated under Rule 4(d)(2) to waive service, and Defendants have advanced no good cause for refusing service.

Attorney Walsh attempted to effect service by communicating with Attorney Boxer. Attorney Walsh first contacted Attorney Boxer as the period to serve Defendants drew to a close, sending him the complaint prior to the expiration of the 120-day-period. After May 11, 2012, Attorney Walsh alleges that he repeatedly attempted to contact Attorney Boxer to confirm whether Defendants waived service and when Defendants planned to file an answer. Attorney Walsh's emails and phone calls apparently went unanswered, except for a July 20 email stating that Attorney Boxer was busy and an August 5 email stating that Attorney Boxer was not authorized to accept service on behalf of Defendants and that he would not be filing an answer. After receiving the later email, Defendants were served within the same month. Throughout this period, Attorney Walsh relied on the parties' continuing communication regarding the action in believing that service would be completed, and he made a good faith attempt to resolve the delay in service without involving the court.

While Plaintiff attempted to resolve the delay with opposing counsel instead of the court, Plaintiff also responded to the District of New Hampshire's June 25, 2012 Order, by filing on June 29, 2012 a motion to extend the time to serve Defendants until August 29, 2012. Once the court granted the motion to extend time, Plaintiff complied with the court's order by serving Defendants on August 26, 2012. *Cf. Chandler v. Cent. Vt. Pub. Serv. Corp.*, 2012 WL 966491, at *3 (D. Vt. Mar. 21, 2012) (denying additional time to serve because plaintiff had been granted previously one extension of time and had been alerted to deficiencies with plaintiff's prior attempts to serve but had "not made any effort to cure the alleged deficiencies"); *Madden v. Town of New Haven*, 2008 WL 2483295, at

8

*2-3 (D. Vt. June 17, 2008) (concluding dismissal was appropriate when plaintiff "was aware of a potential defect in service early on, but made no effort to remedy the defect").

A remaining consideration is the length of time Plaintiff waited to effect service or seek an extension. *Zapata*, 502 F.3d at 199. As Defendants have noted, Plaintiff did not move for an extension of service until the District of New Hampshire ordered him to do so forty-five days after the May 11, 2012 deadline had passed, and did not eventually serve Defendants until 107 days after the original time for service had expired. Plaintiff's delay in this case, however, does not warrant the harshest sanction of dismissal, especially when Defendants could have curtailed the delay by accepting service. *See Arndt v. Napolitano*, 495 F. App'x 178, 180-81 (2d Cir. 2012) (affirming dismissal when plaintiff was informed several times over the course of four months that a defendant had not been served, but plaintiff waited another eight months before moving for an extension of time, which was twenty-two months after plaintiff filed suit); *Dicks v. Chow*, 382 F. App'x 28, 30 (2d Cir. 2010) (affirming dismissal when, over a year after plaintiff filed an amended complaint, district court provided notice that "unserved defendants would be dismissed" and plaintiff never asserted any justification for the failure to serve).

The court therefore finds that a balancing of the equities weighs against dismissal, and Defendants' motion is DENIED.

## CONCLUSION

For the reasons stated above, the court hereby DENIES Defendants' Motion to Dismiss and/or to Reconsider the District of New Hampshire's August 9, 2012 Order Granting Plaintiff's Motion to Extend Time. (Doc. 27.)
SO ORDERED.

Dated at Rutland, in the District of Vermont, this 19th day of April, 2013.

*/s/ Christina Reiss*

Christina Reiss, Chief Judge
United States District Court