U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2014 MAY 27 PM 3:32

CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| ZACHARY KLINKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:12-cv-254 |
| ) | |
| LEON FURDIGA and KATHERINE ) | |
| SCANLAN, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER DENYING
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(Doc. 73)

Pending before the court is a motion for summary judgment filed by Defendants Leon Furdiga and Katherine Scanlan. (Doc. 73.) Defendants contend they were acting as general contractors when Plaintiff Zachary Klinker, a roofer, was injured while working on the construction of Defendants' principal residence. Because the Vermont Supreme Court has held that general contractors fall within the definition of a statutory employer and are thus immune from suit pursuant to Vermont Workers' Compensation Act, 21 V.S.A. §§ 601-711, Defendants argue that they are entitled to judgment as a matter of law in their favor.[1] Plaintiff opposes the motion and contends that Defendants acted as

---

[1] Defendants further argue that Plaintiff cannot establish the essential elements of a negligence/premises liability claim against Defendants. *See* Doc. 78 at 5-9. Plaintiff did not respond to this claim which was raised for the first time in Defendants' reply brief. "The Second Circuit has made clear that it disfavors new issues being raised in reply papers." *McGarry v. Pallito*, 2013 WL 3338682, at *8 n.11 (D. Vt. July 2, 2013) (collecting Second Circuit cases); *see also McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) (noting courts "ordinarily will not consider issues raised for the first time in a reply brief"); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) (directing that arguments not made in an opening brief are waived, even if raised in a reply brief). At oral argument, Defendants conceded that this alternative challenge to Plaintiff's negligence/premises

homeowners, not general contractors, and are therefore liable for their independent acts of negligence.

The court heard oral argument on the pending motion on April 7, 2014, at which time the court took the matter under advisement.

Plaintiff is represented by Michael F. Walsh, Esq. and Stephen L. Fine, Esq. Defendants are represented by Andrew C. Boxer, Esq. and Joseph J. Sluka, Esq.

I.  **Factual Background.**

  A.  **Undisputed Facts.**

Plaintiff was injured on January 13, 2009 on Defendants' property located at 105 Prospect Street, in Brattleboro, Vermont. At the time of his injury, Plaintiff was employed by the Eric Slade Roofing Company ("Slade Roofing Company"). Defendants hired Slade Roofing Company to install a roof on their principal residence which they were in the process of constructing. After Plaintiff fell from Defendants' roof, Slade Roofing Company paid workers' compensation benefits to Plaintiff related to his injuries. In this lawsuit, Plaintiff seeks further compensation from Defendants for his injuries, alleging Defendants negligently failed to provide "adequate safety precautions, including safety harnesses, which would have prevented [him] from falling." (Doc. 1 at 1.)

In support of their contention that they were acting as general contractors at the time of the incident, Defendants point to Defendant Furdiga's experience as a carpenter and electrician which began when he was twelve years old and which included residential, commercial, light commercial, and industrial construction projects, including work on one roof.[2] Although he previously owned an electrical and remodeling company that employed four employees, in approximately 1989, Defendant Furdiga "laid [his] tools down and went into supervision" (Doc. 73-2 at 4; 12/19/13 Furdiga Dep. at 11:22-

---

liability claim was not properly before the court in the absence of supplemental briefing by both parties.

[2] Defendant Scanlan has no apparent education, experience, or training in the construction field, and Defendants submitted no evidence regarding her role in the construction of Defendants' residence.

2

12:2). Thereafter, for approximately fifteen years, he was employed as a superintendent who "ran the field" and "laid the work out" for between twelve to three hundred employees. In this role, Defendant Furdiga worked on a wide variety of projects, including "residential; hospitals; clinics; warm-storage buildings; sewage disposal buildings; water treatment plants; power plants." (Doc. 73-2 at 4-5; 12/19/13 Furdiga Dep. at 12:6-13:19.) Defendant Furdiga was never a licensed building contractor. He retired in 2005.

In approximately 2006, Defendants commenced construction on their principal residence, which they were building "from the ground up." (Doc. 73-2 at 3; 12/19/13 Furdiga Dep. at 8:1-2.) Defendant Furdiga performed the building design and architectural work himself, and secured a permit from the town of Brattleboro for the construction. In approximately 2007, after construction began, Defendant Furdiga secured a general liability insurance policy for the premises and rented and installed a fence to secure the construction site.

Defendant Furdiga was "in charge of building" the residence and was "overseeing everything that was done." (Doc. 73-2 at 3; 12/19/13 Furdiga Dep. at 8:12-15.) With assistance, he performed certain tasks including "all of the framework" and installing the windows. (Doc. 73-2 at 5-6; 12/19/13 Furdiga Dep. at 15:19-17:5.) He hired contractors to perform other tasks, including laying the foundation, erecting the timber frame, constructing and installing the metal work for the heating system, and installing the plumbing. Defendant Furdiga purchased the roofing panels himself, although he hired two other contractors to install the panels, which required the use of a crane. To finish the roof, Defendant Furdiga solicited bids from four different contractors, and he ultimately hired the Slade Roofing Company to install a standing seam roof.

In approximately January 2009, the Slade Roofing Company began its work on the roof at Defendants' residence. The company's foreman, Plaintiff, and another employee arrived in the late afternoon of January 13, 2009 to clean the snow off the roof in preparation for their work. They determined that they did not need to use hook ladders and staging because as Plaintiff explained:

3

> [W]e only used a ladder . . . . Mr. Furdiga already had it set up with 2 by 4s. I couldn't see because of the snow, but there was 2 by 4s; the day of the accident there was 2 by 4s nailed to the roof kind of like a ladder . . . . And the pitch of the roof was not very steep. It was more of a flat pitch of a roof. So, it was walkable, is what we called it, walkable so you didn't need the staging and the hook ladders. . . . So, you just put a ladder up on the roof and climb up on the roof.

(Doc. 73-3 at 6; 12/19/13 Klinker Dep. at 67:11-68:2.) Plaintiff had never seen or used this type of set-up previously and did not see any ropes secured to the roof.

Defendant Furdiga was present when Plaintiff suffered his injury on January 13, 2009. He observed that the roofers were not using harnesses, which he kept in the garage, and that they were not using safety ropes, which he had installed approximately three months previously. He did not say anything to the roofers about the harnesses and ropes because he did not think it was his "place" since they were "Eric's employees." (Doc. 78-1 at 6; 12/19/13 Furdiga Dep. at 25:3-5.)

After the foreman and the other employee had cleared the majority of snow from the roof, Plaintiff joined the two men on the roof to "finish raking it off." (Doc. 78-1 at 6; 12/19/13 Furdiga Dep. at 25:10-20.) In the course of this task, Plaintiff fell off the back side of Defendants' residence and suffered injuries.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

Summary judgment must be granted when the record shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (internal quotation marks omitted). In deciding the motion, the district court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party, and must deny the motion if a rational juror could decide in favor of that party under the applicable law. *See Scott v. Harris*, 550 U.S. 372, 378-80 (2007).

In this case, there are no disputed facts material to the determination of whether Defendants were acting as general contractors and are entitled to statutory employer status under Vermont's Workers' Compensation Act. Accordingly, the only issue before the court is whether Defendants have established that they are entitled to judgment on that issue in their favor as a matter of law.[3]

### B. Vermont Law Governing Workers' Compensation Claims.

Vermont's Workers' Compensation Act is an employee's exclusive remedy against his or her statutory employer for work-related injuries:

> Except as provided in subsection 618(b) and section 624 of this title, the rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he or she is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of the employee, the employee's personal representatives, dependents or next of kin, at common law or otherwise on account of such injury.

21 V.S.A. § 622. While the parties agree that the § 618(b) exception is inapplicable in this case, they dispute whether 21 V.S.A. § 624 applies. Section 624 provides that:

> Where the injury for which compensation is payable under the provisions of this chapter was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer, the acceptance of compensation benefits or the commencement of proceedings to enforce compensation payments shall not act as an election of remedies[.]

---

[3] Because federal subject matter jurisdiction in this case is based on diversity of citizenship, the court applies the substantive law of the forum state. *See Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *see also Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

5

21 V.S.A. § 624(a). Thus, for an employee to recover compensation in a third-party suit for a work-related injury the defendant must be "some person other than the employer." 21 V.S.A. § 624(a); *see also Arnold v. Palmer*, 2011 VT 8, ¶ 9, 189 Vt. 608, 609, 19 A.3d 592, 594 ("Under the Act, a workers' compensation award excludes all other rights and remedies for an employee's work-related personal injuries *against his employer*, but an employee may bring suit against a person *other than* the employer.") (internal quotation marks and citations omitted). An "employer" is statutorily-defined as follows:

> [A]ny body of persons, corporate or unincorporated, public or private, and the legal representative of a deceased employer, and includes the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

21 V.S.A. § 601(3).

"Section 601(3) creates a statutory employer/employee relationship where no such relationship existed at common law." *In re Chatham Woods Holdings, LLC*, 2008 VT 70, ¶ 10, 184 Vt. 163, 169-70, 955 A.2d 1183, 1188. The "legislative intent" of 21 V.S.A. § 601(3) "was to impose liability only upon the owner or proprietor of a regular trade or business conducted on his premises, or the premises of another, where an . . . independent contractor is carrying out some phase of the owner's or operator's business." *King v. Snide*, 479 A.2d 752, 754 (Vt. 1984). The statutory definition covers any employer "who, although not the direct employer, is nevertheless the virtual proprietor or operator of the business there carried on." *Arnold*, 2011 VT 8, ¶ 9, 189 Vt. at 609-10, 19 A.3d at 594 (internal quotation marks omitted).

"[T]he critical inquiry in determining whether an employer is a 'statutory employer' under § 601(3) is whether the type of work being carried out by the independent contractor is the type of work that could have been carried out by the owner's employees as part of the regular course of the business." *Edson v. State*, 2003 VT 32, ¶ 7, 175 Vt. 330, 332, 830 A.2d 671, 673; *accord Frazier v. Preferred Operators,*

6

*Inc.*, 2004 VT 95, ¶¶ 6-8, 177 Vt. 571, 572-73, 861 A.2d 1130, 1132-33 (describing "nature-of-the-business" test for defining a statutory employer, as opposed to the "right-to-control" test). "This is the critical inquiry because § 601(3)'s underlying purpose . . . is to prevent business owners or general contractors from attempting to avoid liability for workers' compensation benefits by hiring independent contractors to do what they would have otherwise done themselves through their direct employees." *Vella v. Hartford Vt. Acquisitions, Inc.*, 2003 VT 108, ¶ 7, 176 Vt. 151, 154, 838 A.2d 126, 130 (internal quotation marks omitted).

### C. Whether Defendants Are Statutory Employers.

Defendants contend that they are "employers" pursuant to 21 V.S.A. § 601(3) because they were acting as general contractors in building their residence. They argue that Vermont's Workers' Compensation Act imposes no requirement that a property owner be engaged in a business, for profit, to be a statutory employer.

In *Welch v. Home Two, Inc.*, 783 A.2d 419 (Vt. 2000), the Vermont Supreme Court held that general contractors fall within the statutory definition of an employer, rejecting a plaintiff's "attempt[] to preserve the option of collecting workers' compensation benefits from the subcontractor *and* suing the general contractor for negligence by application of a statutory employer 'test' that would insulate a general contractor from the definition of 'employer.'" *Id.* at 421. In concluding that general contractors should be treated as statutory employers, the Vermont Supreme Court noted:

> It would be difficult, to say the least, to give effect to the clear legislative intent to make general contractors "employers" for purposes of broadening workers' compensation coverage, if general contractors cannot be said to be operators of the general contracting business on the premises where the construction project takes place.

*Id.* at 422. Thus, it is because general contractors are "virtually" the "operator of the business . . . carried on" at a construction site that they fall within the statutory definition of an "employer." 21 V.S.A. § 601(3).

Here, Defendants submitted no evidence that Defendant Scanlan had any role in the construction of their residence beyond her mere ownership of the property. There is

7

thus neither a factual nor legal basis for the court to conclude that she was acting as a general contractor in the construction of Defendants' home. In contrast, it is undisputed that Defendant Furdiga oversaw construction of the residence; that he performed certain tasks customarily performed by a general contractor; and that he had the skills and experience to perform this work although he was retired. The question before the court is whether this is sufficient to confer statutory employer status upon him. The court concludes that it is not.

"A statutory employer does not include the mere owner of the premises, unless the owner is also the virtual proprietor or operator of the business there carried on." *Vella*, 2003 VT 108, ¶ 5, 176 Vt. at 154, 838 A.2d at 129 (internal quotation marks, citations, and alterations omitted). "Whether the work contracted for by the owner or proprietor with the independent contractor is a part of, or process in, the trade, business or occupation of the owner must be decided on a case by case basis." *Frazier*, 2004 VT 95, ¶ 9, 177 Vt. at 573, 861 A.2d at 1134 (citation omitted). "Due consideration must be given to the customary practice of the owner or proprietor in carrying out his usual business and to the terms of the contract between the employee and the independent contractor." *Id.* (citation omitted). In addition, the "work being done by the injured employee [must] pertain[] to the [owner's] business." *Frazier*, 2004 VT 95, ¶ 10, 177 Vt. at 574, 861 A.2d at 1134 (citation omitted).

In the construction of his own home, Defendant Furdiga was not engaged in the "regular course of [his] business," *Edson*, 2003 VT 32, ¶ 7, 175 Vt. at 332, 830 A.2d at 673, or engaged in a "trade, business, or occupation." *Frazier*, 2004 VT 95, ¶ 9, 177 Vt. At 573, 861 A.2d at 1134. He was, instead, retired from the construction field and acting as a general contractor on a home project for his own benefit. Moreover, Plaintiff was not injured in the course of doing work related to Defendant Furdiga's business, he was injured in the course of doing work related to his employer Slade Roofing Company's business. There is thus no basis, under Vermont law, to deem Defendants statutory employers. Defendants nonetheless ask the court to draw a distinction between a completed home in which the owners live and a home under construction for which the

property owners are serving as general contractors but where they do not yet reside. Defendants point to *Betts v. Kempers*, 745 P.2d 283 (Colo. App. 1987), for the proposition that a court must examine the nature of the project at issue to determine whether private homeowners acting as general contractors are statutory employers. In *Betts*, however, the Colorado statutes at issue differ markedly from Vermont's. As the *Betts* court observed:

> There are at least two categories of "statutory employers" that the Act recognizes. One of these classes of statutory employers is created by § 8-48-102(1), which provides that an owner of real property, who contracts to have "any work done on and to said property," is to be considered the employer of the contractor and of his employees. However, exempted from this provision is: "the owner of a *private home* who contracts out any work done to or about said home."
>
> Thus, if the work being performed at the time of plaintiff's injuries is considered as being done "to or about" a "private home," defendant fell within this exception to § 8-48-102(1), and he would not be considered to be a statutory employer. If, on the other hand, the structure cannot be considered to be a private home, defendant must be deemed to have been plaintiff's statutory employer and immune from suit under § 8-42-102.

*Id.* at 283-84 (internal citations, alterations, and notations omitted) (concluding the structure was "uncompleted" at the time of the accident giving rise to the lawsuit and thus was not a "private home" within the meaning of Colorado's statute).

Section 601(3) of Vermont's Workers' Compensation Act contains no comparable distinction concerning a "private home." Accordingly, it is not the nature of the project or its state of completion that governs, rather it is whether the type of work being carried out (and in which the plaintiff is injured) is the type of work that could have been carried out by the general contractor's own employees as part of the general contractor's regular course of business. *Vella*, 2003 VT 108, ¶ 5, 176 Vt. at 154, 838 A.2d at 129.

In this case, regardless of whether Defendant Furdiga performed tasks customarily performed by a general contractor, neither he nor Defendant Scanlon was engaged in the trade, business, or occupation of home construction. Moreover, Plaintiff was not injured in the course of work that could have been carried out by Defendants' own employees, he

9

was injured in the course of work that Defendants, as homeowners, contracted with Plaintiff's employer to perform. Allowing a homeowner who acts as a general contractor on a home project to claim statutory employer status would thus do nothing to further "§ 601(3)'s underlying purpose [which is] to prevent business owners or general contractors from attempting to avoid liability for workers' compensation benefits by hiring independent contractors to do what they would have otherwise done themselves through their direct employees." *Vella*, 2003 VT 108, ¶ 7, 176 Vt. at 154, 838 A.2d at 130 (internal quotation marks omitted).

Because Defendants have not established under 21 V.S.A. § 601(3) that they are statutory employers for purposes of Vermont's Workers' Compensation Act, Defendants are "some person[s] other than the employer," for purposes of Plaintiffs' lawsuit. Defendants have thus failed to establish that they are entitled to judgment as a matter of law in their favor on Plaintiffs' negligence/premises liability claim.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendants' Motion for Summary Judgment. (Doc. 73.)

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 27th day of May, 2014.

Christina Reiss, Chief Judge
United States District Court